UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERROL L. WALKER,<br>        Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>        Defendant | CIVIL ACTION NO. 4:21-CV-2029<br><br><br>(ARBUCKLE, M.J.) |

**<u>MEMORANDUM OPINION</u>**

## I.  INTRODUCTION

Plaintiff Errol L. Walker, an adult who lives in the Middle District of Pennsylvania, alleges he suffers from depression and debilitating insomnia that impair his memory and make it impossible to understand, remember, or carry out more than one- or two-step tasks. Plaintiff's application for disability insurance benefits under Title II of the Social Security Act was denied, and he now seeks judicial review of the final administrative decision of the Acting Commissioner of Social Security ("Commissioner"). Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is

supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II. BACKGROUND & PROCEDURAL HISTORY

On February 6, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 11-2, p. 16). In this application, Plaintiff alleged he became disabled on December 28, 2019, when he was 56 years old, due to the following conditions: major depressive disorder, sleep apnea, and generalized anxiety disorder. (Admin. Tr. 186; Doc. 11-6, p. 5). Plaintiff alleges that the combination of these conditions affects his ability to lift, concentrate, understand, follow instructions, and his memory. (Admin. Tr. 198). Plaintiff has a high school education. (Admin. Tr. 24, 187; Doc. 11-2, p. 25, Doc. 11-6, p. 6). Before the onset of his impairments, Plaintiff worked as an operations engineer for a paving contractor. *Id*.

On July 30, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 11-2, p. 16). On November 4, 2020, Plaintiff's application was denied at the reconsideration level of administrative review. *Id.* On November 20, 2020, Plaintiff requested an administrative hearing. *Id*.

On March 4, 2021, Plaintiff, assisted by counsel, appeared and testified during a telephone hearing before Administrative Law Judge Mike Oleyar (the "ALJ"). *Id*.

On June 1, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 25; Doc. 11-2, p. 26). On July 19, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 163; Doc. 11-4, p. 73).

On October 1, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 11-2, p. 2).

On December 3, 2021, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence. *Id*. As relief, Plaintiff requests that the court award benefits, or in the alternative remand this matter for a new administrative hearing. *Id*.

On March 11, 2022, the Commissioner filed an answer. (Doc. 10). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. *Id*. Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 12), the Commissioner's Brief (Doc. 13), and Plaintiff's Reply (Doc. 14) have been filed. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the relevant authority for evaluating challenges to an ALJ's RFC assessment.

### A.   Substantial Evidence Review – the Role of This Court

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

---

[1] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g., Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

---

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

### B. Standards Governing the ALJ's Application of The Five-Step Sequential Evaluation Process

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

---

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[11] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[12] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[14] 20 C.F.R. § 404.1520(a).

[15] 20 C.F.R. § 404.1520(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2).

him or her from engaging in any of his or her past relevant work.[18] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

      **C.**    **Evaluating Challenges to an ALJ's RFC Assessment**

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the most a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[20] In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe.[21] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[22]

---

[18] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.
[19] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.
[20] 20 C.F.R. § 404.1545.
[21] 20 C.F.R. § 404.1545.
[22] SSR 96-8p, 1996 WL 374184 at *7.

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[23] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case record.[24] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[25]

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

---

[23] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

[24] *Id.*

[25] *Id.*

## IV. DISCUSSION

Plaintiff raises the following issue in his statement of errors:

(1) "The ALJ failed to incorporate Plaintiff's limitation to one- to two-step tasks into the RFC, despite finding the state agent opinions persuasive." (Doc. 12, p. 6).

### A. The ALJ's Decision Denying Plaintiff's Application

In his June 2021 decision, the ALJ found that Plaintiff meets the insured status requirement of Title II of the Social Security Act through December 31, 2024. (Admin. Tr. 17; Doc. 11-2, p. 18). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 28, 2019 (Plaintiff's alleged onset date), and June 1, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 18; Doc. 11-2, p. 19).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: depressive disorder, generalized anxiety disorder, social anxiety disorder, PTSD, and substance abuse in remission. *Id*. The ALJ also identified the following medically determinable non-severe impairments: insomnia, history of mitral valve prolapse, history of sleep-

related breathing disorder, hypertension, and benign prostate hyperplasia with lower urinary tract symptoms.

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) except:

> the claimant can frequently balance, stoop, kneel, crouch, crawl and climb on ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant is limited to understanding, remembering, or applying simple instructions. The claimant is limited to frequent interaction with supervisors and coworkers and occasional interaction with the public. The claimant is limited to perform detailed, but involved instructions, generally described as simple, routine, unskilled work, but not at a production rate pace such as assembly line work.

(Admin. Tr. 20; Doc. 11-2, p. 21).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 24; Doc. 11-2, p. 25).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24-25; Doc. 11-2, pp. 25-26). To support his conclusion, the

ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: laundry worker, DOT #361.687-018; hand packer, DOT #920.587-018; and hand launderer, DOT #361.684-010. *Id*.

### B. Whether the ALJ Properly Excluded a Limitation to One- or Two-Step Tasks from the RFC Assessment

In this case, two state agency psychological consultants (Virginia Carolyn Martin, Psy.D. and Anthony Galdieri, Ph.D.) and a consultative examiner (Kathleen Lendermann, Psy.D.) evaluated Plaintiff's ability to perform work-related activities. Two treating sources Shelby Margut, M.D. and Andrew Hagenauer, D.O., evaluated Plaintiff's ability to perform work-related activities.

The treating sources assessed that Plaintiff may be "off task" either 5% (Dr. Hagenauer) or 15% (Dr. Margut) of the workday, but they did not suggest that Plaintiff would be limited to one- or two-step tasks. (Admin. Tr. 406; Doc. 11-7, p. 83); (Admin. Tr. 432; Doc. 11-7, p. 109).

After examining Plaintiff, Dr. Lendermann concluded that Plaintiff's "memory difficulty" would not limit his ability to understand, remember or carry out simple instructions, and would cause either "no" or "mild" limitations to his ability to understand, remember and carry out complex instructions. (Admin. Tr. 361; Doc. 11-7, p. 38).

On July 21, 2020, Dr. Martin noted that:

> The claimant's basic memory processes are intact. The claimant can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks). The claimant can make simple decisions and would not require special supervision to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a schedule and at a consistent pace.

(Admin. Tr. 68; Doc. 11-3, p. 11). On November 3, 2020, Dr. Galdieri included an identical explanation in support of his own prior administrative medical findings. (Admin. Tr. 86; Doc. 11-3, p. 29). The ALJ found the "PRT" assessments by these sources to be "persuasive" but did not specifically discuss the mental RFC findings limiting Plaintiff to "simple" tasks. (Admin. Tr. 23-24; Doc. 11-2, pp. 24-25).

Following his articulation of the persuasiveness of the Martin and Galdieri prior administrative findings, the ALJ analyzed the opinion of a vocational expert. In doing so, the ALJ wrote:

> The Opinion of VE Paula Santagati that <u>limiting the claimant to 1 and 2 step tasks (as stated in the DDEs) prohibits all work is unpersuasive (Exhibit 17E)</u>. The undersigned has not limited the claimant to performing 1 and 2 step tasks as it is clearly unsupported in the record. Accordingly, this opinion is clearly inapplicable and moot.

(Admin. Tr. 24; Doc. 11-2, p. 25) (emphasis added). In another part of his decision, the ALJ noted that Plaintiff admitted his memory difficulties do not prevent him from performing simple maintenance (mowing, cleaning, and vehicle maintenance),

Page 14 of 19

preparing meals (eggs, oatmeal, or meat), paying bills, and driving (Plaintiff is able to drive from Pennsylvania to South Carolina by himself, taking rest breaks to sleep). (Admin. Tr. 18; Doc. 11-2, p. 19); (Admin. Tr. 193-200; Doc. 11-6, pp. 12-19); (Admin. Tr. 236-243; Doc. 11-6, pp. 55-62); (Admin. Tr. 48; Doc. 11-2, p. 49).

The ALJ limited Plaintiff to the performance of "simple" tasks, but did not include a limitation to "one- or two-step tasks." Plaintiff argues that the rejection of this limitation, without explanation, is an error. We construe this as an argument that the ALJ's analysis does not comport with the requirement in SSR 96-8p that an ALJ must "always consider and address medical source opinions," and explain why an opinion from a medical source was not adopted where it conflicts with the ALJ's RFC assessment.[26]

The Commissioner disagrees with Plaintiff's position. She argues that the ALJ offered a specific explanation to support his decision, and was not required to discuss every finding or limitation made by Galdieri or Martin simply because their opinions were found "persuasive." (Doc. 13, p. 16) (*citing Burrell v. Kijakazi*, No. 21-3662, 2022 WL 742841, at *3 (E.D. Pa. Mar. 10, 2022)). She also argues, in the alternative,

---

[26] 1996 WL 374184 at *7.

that even if the ALJ was required to do so, the ALJ unambiguously stated that the limitation to one- and two-step tasks was not supported by the record.

In reply, Plaintiff argues that the passing comment that the limitation to one- and two-step tasks demonstrates that the opinion was considered, but is not an articulation of *how* that evidence was considered. (Doc. 14, pp. 2-3).

Like this case, in *Burrell*, a state agency psychological consultant reviewed a claimant's medical records and assessed that the claimant "could make simple decisions, cope with minor demands, follow 'simple 1-2 step task directives', perform simple routine type tasks and retain simple task instructions."[27] The ALJ concluded that the opinion was "persuasive" but did not include the limitation that Plaintiff could only perform one- and two-step tasks and did not explain why that limitation was excluded.[28] On appeal to the District Court, the claimant argued that substantial evidence did not support the final decision denying his applications for benefits because the ALJ did not incorporate or discuss the limitation to one- and two-step tasks.[29] In resolving this argument, the Court observed that:

> As an initial matter, when determining a claimant's RFC, an ALJ is not required to incorporate every finding or limitation made by a medical source simply because the ALJ finds the opinion persuasive. *See*

---

[27] *Burrell,* 2022 WL 742841 at *2.

[28] *Id.* at 3.

[29] *Id.*

> *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("The ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive . . ."). In fact, the regulations state that the RFC determination is expressly reserved for the Commissioner. *Id.*; *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); 404.1546(c); 416.946(c). Therefore, Plaintiff's argument that the ALJ was required to include the "1-2 step" limitation is unavailing.[30]

Although the Court in *Burrell* does not specifically address the new regulations applicable in this case, other courts have found that an ALJ is not required to incorporate every limitation in a medical opinion if that opinion is found "persuasive."[31] Based on this caselaw, we cannot conclude that the ALJ was *required* to credit all aspects of the Martin and Galdieri prior administrative medical findings.

Moreover, substantial evidence supports the RFC assessment in this case. Both Martin and Galdieri assessed that Plaintiff's basic memory processes are intact, they expressly represented that their RFC assessments are consistent with Dr. Ledermann's opinion, and that medical evidence fully supports Dr. Ledermann's

---

[30] *Id.* at 3.

[31] *See e.g. Godfrey v. Kijakazi,* No. 6:20-2504-TMC-KFM, 2021 8014681 at, *6 (D.S.C. Sept. 10, 2021) *report and recommendation adopted* 2022 WL 951620 (D.S.C. Mar. 30, 2022); *Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *1 (E.D. Ohio Jan. 8, 2021) (finding that the new regulations provide no basis for abandoning the precedent that an ALJ is not required to adopt every facet of an opinion expressed by a medical source where it is accorded "great" weight.).

opinion (limiting Plaintiff to simple tasks, but not one- and two-step tasks). (Admin. Tr. 68; Doc. 11-3, p. 11). Moreover, in conjunction with his RFC assessment, the ALJ provided a thorough analysis of the Ledermann opinion and of Plaintiff's activities of daily living (which include tasks that exceed the one- and two-step limitation, such as driving himself from Pennsylvania to South Carolina). The ALJ also noted that Plaintiff had no sustained mental health treatment during the adjudicative period, was seen by his primary care providers on an intermittent as needed basis, and the only treatment provided was medication for his anxiety (which Plaintiff used on an as needed basis). Last, the ALJ in this case did make a passing reference to the one- and two-step task limitation, and noted that the record did not support it. Although his passing reference was not offered with an accompanying explanation, the decision, read as a whole, is sufficient to communicate the basis for that conclusion, and to permit judicial review.

Because the ALJ addressed the persuasiveness of each source, accurately and reasonably cited substantial evidence to support his RFC assessment, and did so with enough clarity to permit judicial review, we are not persuaded that remand is required.

## V. CONCLUSION

Accordingly, we find that Plaintiff's request for relief is DENIED as follows:

(1) The final decision of the Commissioner is AFFIRMED.

(2) Final judgment will be issued in favor of the Commissioner.

(3) Appropriate orders will be issued.

Date: March 24, 2023                                   BY THE COURT

                                                        *s/William I. Arbuckle*
                                                        William I. Arbuckle
                                                        U.S. Magistrate Judge